## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| LAURA WICIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 17 C 6856 |
| v. ) | |
| ) | Hon. Virginia M. Kendall |
| COUNTY OF COOK, COOK COUNTY ) | |
| HEALTH AND HOSPITAL SYSTEM d/b/a ) | |
| Oak Forest Hospital and John H. Stroger Jr. ) | |
| Hospital, and LYNDA HARPER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Laura Wicik brings this action against her employer Cook County Health and Hospital System ("CCHHS"), her supervisor Lynda Harper, and Cook County for discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq*.; interference with her rights under the Family Medical Leave Act ("FMLA"); and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. Currently before the Court is Defendants' motion to dismiss. (Dkt. 11). For the reasons set forth below, Defendants' motion is granted in part and denied in part. Wicik is given until April 13, 2018 to file an amended complaint consistent with this opinion to the extent that she can do so. In any event, the parties are directed to exchange their mandatory initial discovery within 30 days, or by April 13, 2018.

## BACKGROUND[1]

In June 1992, Laura Wicik, a Caucasian woman, began working for CCHHS. Wicik suffers from a "medical disability, which includes high blood pressure and stress"; Defendants

---

[1] For the purposes of Defendants' motion to dismiss, the Court assumes as true all well-pleaded allegations set forth in the complaint. *See Williamson v. Curran*, 714 F.3d 432, 435 (7th Cir. 2013).

1

were aware of her condition, although Wicik does not include specifics concerning how or when Defendants became so aware. (Dkt. 1) at ¶¶ 4, 14, 20, 24; *see also id.* at ¶ 48 ("Upon information and belief, Plaintiff has advised her supervisors, union representatives, and the Defendants of her disabilities . . . ."). As relevant here, on or about November 4, 2013, Wicik was working as an administrative assistant at John H. Stroger Jr. Hospital ("Stroger"). *Id*. at ¶ 18. During her time at Stroger, her supervisor, Fran Rampick, harassed her by issuing unwarranted "write ups" and otherwise "targeted [Wicik] for harassment." *Id*. ¶¶ 19, 23. Wicik reported incidents of harassment and reverse-racial discrimination to Defendant "on multiple occasions" and she "complained about her treatment in 2015" and after, but no discipline was effected and management continued to pressure her and disregard her need for disability accommodations. *Id*. at ¶¶ 16, 21, 22.

At some point (which, based on the complaint's structure and Wicik's EEOC charge, was prior to December 2016), because of her "medical disability," Wicik requested FMLA leave from work, but Defendants interfered with her use of protected leave. Specifically, her managers discouraged her from taking leave, stating that it is "looked down upon and is a strike against employees who use it." *Id*. at ¶¶ 20, 26, 27; *see also id*. at ¶ 65 ("Plaintiff attempted to apply for FMLA time but was discouraged by her supervisors that it would affect her ability to obtain advancements and would put a target on her back."). Therefore, Wicik was "forced" to use sick and vacation time. *Id*. at ¶ 24. When Wicik returned to work, she was "subject to disciplinary write-ups," although Wicik does not specify what the alleged discipline was for. *Id*. at ¶ 25.

On November 22, 2016, Wicik signed a Charge of Discrimination, which she then filed on December 2, 2016. *Id*. at ¶ 40 & Ex. B. Wicik's charge named Stroger as her employer and alleged the following:

> My employer subjected me to disparate and discriminatory treatment on the basis of my disability and interfered with my use of protected medical leave. In 2015, I raised my concerns to the chairman of the company regarding the disparate treatment I was receiving from my manager. I was told that they prefer someone with the mentality of my manager running the office. Nothing was done to remedy the situation, the behavior continued, and I became her target. As a result of management's targeting, the hostile work environment grew worse and I was forced to take time off work due to high blood pressure. When I returned to work, I received a write-up for the events that caused me to miss work in the first place. I requested protected medical leave, but was told management looks down on it and does not approve of employees' [sic] using protected medical leave.

*Id*. at Ex. B.

Around this same time, Wicik's administrative assistant position was eliminated. In December of 2016, Wicik was transferred from Stroger to Oak Forest Hospital, where she worked as a Document Processor in the Call Center under Defendant Lynda Harper. *Id*. ¶¶ 6, 29. Although Wicik was performing her Call Center duties satisfactorily, she was harassed by Harper and her Call Center co-workers. For example, Wicik was not given a telephone at her desk, which meant that she had to walk to her supervisor's office with all questions and issues; her co-workers kept track of her daily whereabouts and behaviors and complained about how often she was moving around the office; she received emails on her days off; she received requests that she report throughout the day regarding her project-completion status; she was disciplined as tardy even though she clocked in within a six-minute non-tardy grace period; she received other disciplinary write-ups; and she received "downgraded reviews." *Id*. at ¶¶ 30–36, 50. Wicik was also harassed when she was required to "aux in and out" for all regular, lunch, and bathroom breaks, because, according to Wicik, she had not been required to "aux in and out" for such breaks previously and CCHHS did not have a policy that required this. *Id*. at ¶¶ 33–34. Finally, at some point, the Chief Operating Officer of the Oak Forest Hospital told Wicik that she would not be promoted because of complaints she had made. *Id*. at ¶ 17.

At some unspecified point, Wicik was diagnosed with "stress urinary incontinence," which caused her to take several breaks throughout the workday. *Id*. at ¶ 37. While she was working at the Call Center under Harper, Wicik received a doctor's note and sought an accommodation from Harper—that she be allowed to take bathroom breaks without "aux[ing] in and out." *Id*. at ¶ 38. Harper denied this request without discussing the request with Wicik, and Harper did not offer any alternative accommodations. *Id*. at ¶ 39.

EEOC issued Wicik a Right to Sue letter on June 26, 2017, after which Wicik filed a four-count complaint alleging: violations of the ADA based on Defendants' failures to accommodate her high blood pressure and urinary incontinence, and discriminatory treatment on account of her disabilities (Count I); a violation of the FMLA because Defendants interfered with her request for FMLA benefits by discouraging her from applying for leave (Count II); retaliation in violation of Title VII for filing her Charge of Discrimination with the EEOC (Count III); and indemnification by Defendant Cook County (Count IV).[2] Wicik seeks compensatory damages and an order requiring Defendants to give her a position "commensurate with her skills and experience and allow[] for an accommodation of her disability." *Id*. at ¶¶ 58, 67, 76, 82.

## **LEGAL STANDARD**

Defendants' seek dismissal of the complaint Federal Rule of Civil Procedure 12(b)(6), which challenges its legal sufficiency. For a claim to survive a motion to dismiss brought pursuant to Rule 12(b)(6), it must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the

---

[2] Wicik also claims to have been harassed following (1) complaints to the Illinois Labor Relations Board regarding the "handling of open positions" when her administrative-assistant position was eliminated, (2) complaints to the EEOC regarding workplace violence, and (3) complaints to a Shakman monitor, but Wicik does not appear bring any causes of action related to these allegations. *Id*. at ¶¶ 28, 42.

4

defendants are liable for the harm. *Id*. In the complaint, a plaintiff must include "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (quoting *Lang v. TCF Nat'l Bank*, 249 F. App'x 464, 466 (7th Cir. 2007)). For purposes of this motion, the Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in Wicik's favor. *See Williamson v. Curran*, 714 F.3d 432, 435 (7th Cir. 2013).

## ANALYSIS

**I.     Failure to Exhaust**

As an initial matter, before litigating an unlawful employment practice under the ADA or Title VII, an employee must file a timely charge of discrimination with the EEOC. *See* 42 U.S.C. § 2000e–5(e)(1), incorporated by 42 U.S.C. § 12117(a); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). This requirement "gives the employer some warning of the conduct about which the employee is aggrieved and affords the EEOC and the employer an opportunity to attempt conciliation without resort to the courts." *Ezell v. Potter*, 400 F.3d 1041, 1046 (7th Cir. 2005) (citation omitted). Wicik has filed the necessary charge, but Defendants move to dismiss allegations that are based on Wicik's incontinence on the ground that they were not included in the charge and therefore are unexhausted.

"A plaintiff's failure to exhaust administrative remedies is an affirmative defense." *Salas v. Wisc. Dep't of Corr.*, 493 F.3d 913, 921 (7th Cir. 2007); *see also Stuart v. Local 727, Int'l Brotherhood of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014) ("A plaintiff is not required to negate an affirmative defense in his or her complaint[.]"). "Affirmative defenses cannot form the basis to dismiss unless the plaintiff's complaint pleads the plaintiff out of court." *Graham v.*

5

*United Parcel Serv.*, 519 F. Supp. 2d 801, 808 (N.D. Ill. 2007) (citing *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718–19 (7th Cir. 1993)); *see also United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (a claim may be dismissed as unexhausted at the motion to dismiss stage if "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense").

Wicik's Charge, which specifically mentions her blood pressure, makes no mention of her urinary incontinence issues. Further, the Charge regards only events that occurred at Stroger in 2015 and 2016. *See* (Dkt. 1) at ¶¶ 37–40 & Ex. B. "The proper scope of a judicial proceeding following an EEOC charge 'is limited by the nature of the charges filed with the EEOC.'" *Hopkins v. Bd. of Educ. of City of Chi.*, 73 F. Supp. 3d 974, 982 (N.D. Ill. 2014) (citing *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992)); *see also Peters v. Renaissance Hotel Operating Co.*, 307 F.3d 535, 550 (7th Cir. 2002). However, there is an exception to this rule for claims that are "reasonably related to one of the EEOC charges and can be expected to develop from an investigation into the charges actually raised." *Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999); *accord Moore v. Vital Prod., Inc.*, 641 F.3d 253, 256–57 (7th Cir. 2011) ("[I]f certain claims are not included in an EEOC charge, a plaintiff can still bring them if they are 'like or reasonably related to the allegations of the [EEOC] charge and growing out of such allegations.'") (citation omitted). To be "reasonably related," the EEOC charge and the relevant claim must involve the same conduct and implicate the same individuals. *Huri v. Office of the Chief Judge of the Circuit Court of Cook County*, 804 F.3d 826, 832 (7th Cir. 2015) (citing *Moore*, 641 F.3d at 257); *accord Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994).

Wicik argues that her Charge, which generally refers to discriminatory treatment "on the basis of [her] disability" is broad enough to encompass all of disability claims in this litigation, including those that occurred during her time at the Oak Forest Hospital Call Center under the supervision of Defendant Harper. *See* (Dkt. 22) at 2–3. But the vague drafting of the Charge's core allegations cannot bring all of her claims for discriminatory treatment within its scope, particularly where the pre- and post-Charge instances of discriminatory treatment involved different actors, different conduct, and even different disabilities, as it does here. For these reasons, Wicik's complaint does not indicate the requisite relationship between the claims contained in her Stroger-specific Charge and the claims she brings in this action that arose from events at Oak Forest Hospital, including those regarding her urinary incontinence. *See Peters*, 307 F.3d at 550 (affirming dismissal of retaliation claim that was not like or reasonably related to the discrimination claims in plaintiff's EEOC charge). Wicik has failed to exhaust her administrative remedies with regard to those claims.

Further, Wicik's argument that additional exhaustion would be futile and therefore should be excused fails. In support of this exception, Wicik argues that "the actions of the Defendants towards the Plaintiff regarding her health have not improved, even after the filing of the complaint." (Dkt. 22) at 3. But Plaintiff's argument—which misconstrues the purposes of the exhaustion requirement—is not a compelling factual basis to support the exception. Where a plaintiff fails to adequately explain a basis, either in law or in fact, in support of a futility argument, there is no reason to invoke the exception. *See Swanson v. Baker & McKenzie, LLP*, 2016 WL 7231610, at *5 (N.D. Ill. Dec. 14, 2016), *aff'd*, 682 F. App'x 490 (7th Cir. 2017).[3] Accordingly, Wicik's failure to exhaust certain of her claims is not excusable.

---

[3] Moreover, the cases that Wicik cites in support of her argument that exhaustion would be futile not only are distinguishable because they arose in the ERISA context, but the plaintiffs in those cases also did not

7

## II. ADA Discrimination Claim (Count I)

Turning next to the allegations that have been properly exhausted, the complaint appears to set forth multiple ADA claims: disparate treatment, hostile work environment,[4] and failure to accommodate, although the distinctions between the claims are not clear.[5] *See Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1022 (7th Cir. 1997) (the term "discrimination" in the ADA can "encompass[ ]" both "disparate treatment" and "failing to provide a reasonable accommodation"). Specifically, Wicik alleges that she was issued unwarranted disciplinary write-ups by her supervisor at Stroger (Rampick), she was told that Defendants preferred someone with her boss's mentality, she was pressured and targeted for harassment, and her need for an accommodation for her high blood pressure and stress was disregarded. (Dkt. 1) at ¶¶ 19, 21–23. As an initial point, Harper is not alleged to have participated in any of the disability discrimination Wicik experienced at Stroger, and, in any event, Wicik concedes in her response that she cannot bring her ADA claim against Harper. *See* (Dkt. 22) at 5. Accordingly, Count I is dismissed as to Harper.

Insofar as Count I alleges disparate treatment by CCHHS, this claim is dismissed because the complaint does not contain facts that would permit a reasonable inference that CCHHS is

---

properly advocate for the exception. *See Gallegos v. Mount Sinai Med. Ctr.*, 210 F.3d 803, 808 (7th Cir. 2000) ("Gallegos does not assert that attempts to pursue administrative review would have been futile"); *Robyns v. Reliance Standard Life Ins. Co.*, 130 F.3d 1231, 1237 (7th Cir. 1997) (Robyns waived the futility argument because she "did not argue this point to the district court," and in any event her argument was solely based on conjecture).

[4] Although the Seventh Circuit has yet to recognize a cause of action under the ADA for a hostile work environment, *see Lloyd v. Swifty Transportation, Inc.*, 552 F.3d 594, 603 (7th Cir. 2009), the Court will assume that such a cause of action exists.

[5] An employee may state a claim for discrimination under the ADA by advancing either (1) a failure to accommodate theory—that is, the employer failed to provide a reasonable accommodation for the employee's disability—or (2) a "disparate treatment" theory—that is, the employer treated the employee differently because of her disability. *Sieberns*, 125 F.3d at 1022. In other words, a failure to accommodate claim involves an employer's *failure* to act, while a disparate treatment claim involves an employer's *affirmative* act. *See Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017); *James v. Hyatt Regency Chicago*, 707 F.3d 775, 782 (7th Cir. 2013).

liable for discriminatory conduct. To recover under the ADA, Wicik must show that (1) she is disabled within the meaning of the ADA; (2) she was otherwise qualified to perform the essential functions of her job with or without accommodation; and (3) she suffered an adverse employment action *because of* her disability. *See Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015). Alternatively, Wicik could establish that (1) she is disabled within the meaning of the ADA; (2) she was meeting her employer's legitimate expectations, (3) she suffered an adverse employment action; and (4) her employer treated similarly-situated, non-disabled employees more favorably. *See id.* "Disability," for purposes of the ADA, is defined as "a physical or mental impairment that substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A).

First, Wicik does not even attempt to allege if or how her "medical disability, which includes high blood pressure and stress" substantially limits any of her major life activities other than the fact that she once took some time off of work on account of the alleged disability. This alone is a sufficient basis on which to dismiss Plaintiff's ADA claim. *See, e.g.*, *Love v. First Transit, Inc.*, 2017 WL 1022191, at *7 (N.D. Ill. Mar. 16, 2017) (dismissing disparate treatment and failure to accommodate claims because the plaintiff had "failed to plead sufficient facts to show that she is disabled"). Even assuming that Wicik has alleged a disability or disabilities for purposes of the ADA, she failed to allege that (1) she suffered an adverse employment action (2) on account of her disability. An adverse employment action is a "materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (alteration in original) (citation omitted); *see Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (a materially adverse change "is one which visits upon a plaintiff a significant change in

employment status") (citing *Andrews v. CBOCS West, Inc.,* 743 F.3d 230, 235 (7th Cir. 2014)). Adverse employment actions can include: (1) diminishing an employee's compensation, fringe benefits, or other financial terms of employment, including termination; (2) reducing long-term career prospects by preventing her from using the skills in which she is trained and experienced, so that the skills are likely to atrophy and her career is likely to be stunted; and (3) changing the conditions in which an employee works in a way that subjects her to a humiliating, degrading, unsafe, unhealthful, or otherwise significantly negative alteration in his workplace environment. *Alamo*, 864 F.3d at 552 (citation omitted).

First, Wicik has not set forth factual allegations that link Rampick's write ups, reprimands, or downgraded reviews to her disabilities, and even if these actions were tied to Wicik's disabilities, Wicik has not alleged that the write-ups, reprimands, or reviews led to any "tangible job consequence," such as suspension, demotion, discharge, or some other financial penalty. *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004) ("There must be some tangible job consequence accompanying the reprimand to rise to the level of a material adverse employment action."). Although Wicik contends that her career prospects were limited because she was "prevented from obtaining other positions in whole or material part because of her disability," (Dkt. 1) at ¶ 41, the only exhausted factual allegation to this point states that "[w]hen Plaintiff complained about her treatment in 2015 to management, she was told that the Defendants preferred someone with her boss' mentality not her." *Id.* at ¶ 21. It is not clear from the complaint how this allegation concerning "mentality" is connected to Wicik's disabilities, but regardless, Wicik has not alleged or even suggested that she applied, sought after, was considered for, or was denied a promotion.

Next, Wicik does not state a claim based on a hostile work environment. To state an ADA claim for a hostile work environment, a plaintiff must allege that (1) her workplace was both subjectively and objectively offensive; (2) her disability was the cause of the harassment; (3) the harassment was sufficiently severe or pervasive so as to alter the conditions of her employment; and (4) there is a basis for employer liability. *Orton-Bell v. Indiana*, 759 F.3d 768, 773 (7th Cir. 2014). Here, Wicik does not set out any factual allegations that suggest conduct that would constitute a subjectively and objectively offensive work environment, any severe or pervasive conduct, or that any harassment was based on her disability. Instead, she conclusively alleges that she was targeted for harassment after raising complaints of disparate treatment with the chairman and that, as a result of the "hostile work environment," she was forced to take time off work. *See* (Dkt. 1) at Ex. B. Without any factual support, however, Wicik's allegations about harassment, pressure, targeting, and a hostile work environment are simply too sparse and conclusory to state a plausible claim against CCHHS. *Iqbal*, 556 U.S. at 678. Although Wicik need only allege at this stage is that "the employer instituted a (specified) adverse employment action against her on the basis of" her disability, *Tamayo*, 526 F.3d at 1084, Wicik's allegations that she was harassed and pressured are nothing more than conclusions and labels.

Finally, to the extent that Count I alleges CCHHS's failure to accommodate Wicik's high blood pressure and/or stress, she likewise fails to set forth the elements of that claim. *See James v. Hyatt Regency Chi.*, 707 F.3d 775, 782 (7th Cir. 2013) (a plaintiff must show that: (1) she is a qualified individual with a disability; (2) the employer was aware of her disability; and (3) the employer failed to reasonably accommodate the disability). In addition to the wanting disability allegations addressed above, Wicik does not allege any facts showing that, while at Stroger, she requested an accommodation or was exempt from this request requirement. *See id*. (in order to

trigger the employer's liability under the ADA, an employee must request an accommodation from his employer unless he has mental disabilities that would make him unable to ask for an accommodation). Thus, Wicik does not plausibly allege an ADA discrimination claim against CCHHS, and Count I is dismissed.

### III. FMLA Interference Claim (Count II)

"The FMLA entitles eligible employees suffering from serious health conditions to twelve workweeks of leave during each twelve-month period." *Guzman v. Brown County*, – F.3d. –, 2018 WL 1177592, at *3 (7th Cir. Mar. 7, 2018) (citing 29 U.S.C. § 2612(a)(1)(D)). The FMLA makes it unlawful for an employer to "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided" by the statute. 29 U.S.C. § 2615(a)(1). A plaintiff need only show that her employer deprived him of an FMLA entitlement; no finding of ill intent is ultimately required. *See Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir. 2006).

To state a claim for FMLA interference, Wicik must allege that (1) she was eligible for the FMLA's protections; (2) CCHHS was covered by the FMLA; (3) she was entitled to take leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; (5) CCHHS denied the FMLA benefits to which she was entitled. *Id*. Defendants challenge only the fourth and fifth elements—notice and denial. *See* (Dkt. 12) at 5–6. Whether an employee provided adequate notice is a fact-specific question that turns on whether the employee's communications would provide the employer with a probable basis that the FMLA *may* apply. *Burnett*, 472 F.3d 471, 479. In this vein, the employee need not expressly mention the FMLA in her leave request, but she has a duty to communicate to her employer that "the medical condition might be serious or that the FMLA otherwise could be applicable." *Collins v. NTN-Bower Corp*., 272 F.3d 1006, 1009 (7th Cir. 2001).

Wicik claims she "invoke[d] her FMLA benefits" and "attempted to apply for FMLA time." (Dkt. 1) at ¶¶ 67, 65. Additionally, she claims that "she was discouraged by her supervisors that [FMLA leave] would affect her ability to obtain advancements and would put a target on her back." *Id*. at ¶ 65. Finally, Wicik claims that "Defendants interfered with [her] request" by telling her "that medical leave is looked down up [sic] and is a strike against employees who use it." *Id*. at ¶¶ 20, 26. Recognizing that the notice standard for an employee seeking FMLA leave is low, Wicik's allegations are sufficient to plead notice. *See Burnett*, 472 F.3d at 478. And her allegations that (1) her managers or supervisors discouraged her from taking leave and (2) she ultimately took sick and vacation leave to avoid taking FMLA leave are sufficient to plead denial. Thus, Wicik has alleged sufficient facts to state an FMLA interference claim against CCHHS, and therefore the motion to dismiss Count II is denied as to that particular Defendant. This case is not like *Stallworth v. Loyola Univ. Chicago*, 2016 WL 3671426, at *3 (N.D. Ill. July 11, 2016), cited by Defendants (*see* (Dkt. 12) at 6), where the plaintiff alleged that he was administratively suspended *before* he had a chance to request FMLA leave in order to prevent him taking such leave. The court there found that the plaintiff's claim was an impermissible "preemptive" interference claim. *Id*. at *3. In contrast, Wicik alleges that CCHHS knew of her medical disabilities, that she told her supervisors she wanted to take FMLA leave and indeed, attempted to apply for leave, but she was discouraged with the prospect of negative employment consequences. This is adequate.

However, as to Harper, again, the complaint indicates that this claim arose from Wicik's time at Stroger and it does not otherwise implicate Harper. Therefore, even though "the FMLA's definition of 'employer' is broader than that of Title VII and encompasses some individual liability," *Eppinger v. Caterpillar Inc.*, 682 F. App'x 479, 481 (7th Cir. 2017) (citing 29 U.S.C.

§ 2611(4)(A)(ii)(I)), Wicik's FMLA interference claim is dismissed to the extent that it is brought against Harper.

## IV. Title VII Retaliation Claim (Count III)

To state a claim for retaliation, Wicik must allege that: "(1) [s]he engaged in statutorily protected expression; (2) [s]he suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action." *Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005). In her complaint, Wicik alleges that, "on information and belief, Defendants' [sic] retaliated against her for filing a Charge of Discrimination against Defendants." (Dkt. 1) at ¶ 70. She also alleges that her "previous discriminatory complaints resulted in harassment, and differing terms and conditions of employment." *Id.* at ¶ 71.

As relevant, Wicik's Charge of Discrimination refers to "discriminatory treatment on the basis of [her] disability." *Id.* at Ex. B. But Title VII only covers unlawful employment practices and retaliation on the basis of an individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1). Disability does not fall under any of these categories but instead is protected by its own separate statute, the ADA, under which Wicik also seeks recovery. Accordingly, Wicik's allegations, which are based on ADA-protected activity, are not sufficient to support a Title VII retaliation claim. *See Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 727 (7th Cir. 2003) (summary judgment properly granted to employer on retaliation claim where plaintiff's complaint to employer "did not invoke any action protected by Title VII").[6]

---

[6] To the extent that Wicik's Title VII retaliation claim is based on "previous discriminatory complaints" that concerned a Title-VII-protected category, such as "reverse-racial discrimination" (Dkt. 1) at ¶ 16, such allegations were not included in her Charge of Discrimination nor are they reasonably related to the allegations of disability discrimination at Stroger that were contained in the charge. *See Ajayi v. Aramark Bus. Servs., Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) (where plaintiff was aware of the action at time of filing of charge, suspected it was discriminatory, but did not include it as part of charge while including other allegations of discriminatory action, the omitted action was not actionable as part of Title VII claim); *Cheek*, 31 F.3d at 501–02 (finding that claim of sex discrimination based on practice of assigning

## V.     Indemnification (Count IV)

The indemnification count survives, because Count II survives in part, and thus Cook County remains a Defendant. *Carver v. Sheriff of LaSalle Cty., Illinois*, 324 F.3d 947, 948 (7th Cir. 2003); *Wojcik v. Cty. of Cook*, 2016 WL 374140, at *5 (N.D. Ill. Feb. 1, 2016); *see also* Fed. R. Civ. P. 17, 19.  As an additional point, CCHHS has argued repeatedly in the past—although not in this particular case—that it is has no legal existence separate from that of Cook County, and that Cook County therefore is the correct defendant in an action against CCHHS or a specific hospital within the system. *See, e.g.*, *Northern v. John H. Stroger Jr. Hosp. of Cook County*, 2017 WL 4281053, at *4 (N.D. Ill. Sept. 27, 2017) (discussing cases and dismissing CCHHS). For this reason as well, Cook County remains in the case.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' motion to dismiss.  Wicik's ADA Discrimination (Count I) and Title VII Retaliation (Count III) claims are dismissed in total.  her FMLA claim (Count II) is dismissed only to the extent it is brought against Defendant Harper; it remains pending against Defendant CCHHS and will proceed to discovery.  Wicik is given until April 13, 2018 to file an amended complaint consistent with this opinion to the extent that she can do so.  In any event, the parties are directed to exchange their mandatory initial discovery within 30 days, or by April 23, 2018.

_____
Hon. Virginia M. Kendall
United States District Judge

Date: March 23, 2018

---

female employees to unprosperous sales routes not actionable where EEOC charge was based on different discriminatory conduct, the practice of requiring employee to pay clients' insurance premiums).

15