IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LAURA WICIK, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 17 C 6856 |
| v. ) | |
| ) | Hon. Virginia M. Kendall |
| COUNTY OF COOK, COOK COUNTY ) | |
| HEALTH AND HOSPITAL SYSTEM d/b/a ) | |
| Oak Forest Hospital and John H. Stroger Jr. ) | |
| Hospital, and LYNDA HARPER, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

After the Court partially dismissed her employment discrimination claims (Dkt. 25), Plaintiff Laura Wicik filed a First Amended Complaint against Defendants Cook County Health and Hospital System ("CCHHS"), Lynda Harper, and Cook County. Currently before the Court is Defendants' Motion to Dismiss. (Dkt. 31). For the reasons set forth below, Defendants' Motion is again granted in part and denied in part.

## BACKGROUND

The facts of the case are sufficiently outlined in the Court's first order granting the Defendants' Motion to Dismiss, familiarity with which is assumed here. Additional factual background provided in the First Amended Complaint is noted and accepted as true for the purpose of reviewing Defendants' Motion to Dismiss. *See Williamson v. Curran*, 714 F.3d 432, 435 (7th Cir. 2013).

Wicik began working for CCHHS in 1992 and suffers from the following medical conditions: high blood pressure, anxiety, depression, and panic attacks. (Dkt. 30) at ¶ 20. Defendants were aware of these conditions. *Id.* On or about November 4, 2013, Wicik was

1

working as an administrative assistant at John H. Stroger Jr. Hospital ("Stroger") and Fran Rampick supervised her. *Id.* at ¶¶ 18–19. During her time at Stroger, Rampick harassed Wicik by issuing unwarranted "write ups," and screaming at her and otherwise subjecting her "to publicly degrading treatment," which "exacerbated and intensified [her] medical conditions." *Id.* at ¶¶ 19, 24–26. Wicik reported incidents of harassment and screaming to Defendant and she complained about her treatment in 2015 to management, but no one was disciplined and management continued to pressure her and also to disregard her need for disability accommodations. *Id.* at ¶¶ 21–22. Wicik was subjected to different conditions of employment than non-disabled employees and she applied for, but was denied, promotions. *Id.* at ¶¶ 45, 46. These actions were taken because of her disability. *Id.* at ¶ 45.

At some point prior to November 22, 2016, Wicik requested Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, *et seq.*, leave from work, but Defendants interfered with her use of protected leave. Specifically, her managers discouraged her from taking leave, stating that it is "looked down upon and is a strike against employees who use it." *Id.* at ¶¶ 30–31. Therefore, Wicik was forced to use sick and vacation time. *Id.* at ¶ 28. When Wicik returned to work, she was subject to disciplinary write-ups, although she does not specify what the alleged discipline was for. *Id.* at ¶ 29.

On November 22, 2016, Wicik signed a Charge of Discrimination, which she then filed on December 2, 2016. *Id.* at ¶¶ 13, 44 & Ex. B. Wicik's charge named Stroger as her employer and alleged the following:

> My employer subjected me to disparate and discriminatory treatment on the basis of my disability and interfered with my use of protected medical leave. In 2015, I raised my concerns to the chairman of the company regarding the disparate treatment I was receiving from my manager. I was told that they prefer someone with the mentality of my manager running the office. Nothing was done to remedy the situation, the behavior continued, and I became her target. As a result

2

of management's targeting, the hostile work environment grew worse and I was forced to take time off work due to high blood pressure. When I returned to work, I received a write-up for the events that caused me to miss work in the first place. I requested protected medical leave, but was told management looks down on it and does not approve of employees' [sic] using protected medical leave.

*Id.* at Ex. B.

Around this same time, Wicik's administrative assistant position was eliminated. In December of 2016, Wicik was transferred to Oak Forest Hospital where she worked as a Document Processor in the Call Center under Defendant Lynda Harper. *Id.* ¶¶ 7, 33. Wicik alleges that she was subject to harassment at Oak Forest Hospital under Harper and that Harper failed to accommodate a different disability—urinary stress incontinence. *Id.* ¶¶ 34–43, 45.

Wicik's First Amended Complaint brings four counts: discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.* (Count I); violation of the FMLA (Count II); retaliation in violation of the ADA for filing her Charge of Discrimination with the EEOC and otherwise complaining of "disparate and discriminatory treatment" (Count III); and indemnification by Defendant Cook County (Count IV).

## LEGAL STANDARD

Defendants' seek dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6), which challenges its legal sufficiency. For a claim to survive a motion to dismiss brought pursuant to Rule 12(b)(6), it must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendants are liable for the harm alleged. *Id.* In the complaint, a plaintiff must include "enough detail to give the defendant fair notice of what the claim is and the grounds upon which it rests, and, through his allegations, show that it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083

3

(7th Cir. 2008) (quoting *Lang v. TCF Nat'l Bank*, 249 F. App'x 464, 466 (7th Cir. 2007)). For purposes of this motion, the Court accepts all well-pled allegations in the complaint as true and draws all reasonable inferences in Wicik's favor. *See Williamson*, 714 F.3d at 435.

## ANALYSIS

I.  **Failure to Exhaust**

The Court previously found that Wicik's Complaint—which alleged only discrimination on the basis of her high blood pressure and urinary incontinence—and the attached Charge of Discrimination together unambiguously indicated that only Wicik's claims regarding discriminatory treatment during her time at Stroger under Rampick's supervision were properly exhausted. *See* (Dkt. 25) at 5–7; *see also United States v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004). That is, only the claims regarding events that pre-date the Charge of Discrimination were exhausted. Further, because the claims of harassment and discrimination that *post-date* the Charge involve different individuals, different conduct, and a different alleged disability (urinary incontinence), they are not "reasonably related" to the claims raised in the Charge such that they can be raised here. *See Green v. Nat'l Steel Corp., Midwest Div.*, 197 F.3d 894, 898 (7th Cir. 1999); *see also Huri v. Office of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 832 (7th Cir. 2015).

In her First Amended Complaint, Wicik continues to base her claims, at least in part, on allegations regarding post-Charge events: her employment at Oak Forest Hospital under Harper's supervision and her urinary-incontinence disability. *See* (Dkt. 30). But she has not attached a Charge of Discrimination that includes claims related to these events, nor does she argue or otherwise allege that these claims have been properly exhausted. Instead, she states that she has re-alleged these facts in her First Amended Complaint simply "for the purposes of

4

maintaining the record for future appeal." (Dkt. 36) at 2. Accordingly, Counts I and II in Wicik's First Amended Complaint again are dismissed without prejudice to the extent that they regard her employment at Oak Forest Hospital or her urinary incontinence and are brought against Harper. She must properly exhaust these claims before bringing them to Court.

II.  **ADA Discrimination Claim (Count I)**

Turning to the allegations that have been properly exhausted, Wicik's disability discrimination claim alleges that she suffered adverse employment actions on account of her disabilities and Defendants failed to accommodate her disabilities. *See Sieberns v. Wal-Mart Stores, Inc.*, 125 F.3d 1019, 1022 (7th Cir. 1997) (the term "discrimination" in the ADA can encompass both "disparate treatment" and "failing to provide a reasonable accommodation"). For both claims, Wicik must allege that she is a qualified individual with a disability within the meaning of the ADA. *See Hooper v. Proctor Health Care Inc.*, 804 F.3d 846, 853 (7th Cir. 2015); *Preddie v. Bartholomew Consol. Sch. Corp.*, 799 F.3d 806, 813 (7th Cir. 2015).

"Disability," for purposes of the ADA, is defined as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). In her First Amended Complaint, Wicik alleges that she has high blood pressure, anxiety, depression, and panic attacks. (Dkt. 30) at ¶¶ 20, 28, 49. She further alleges that these conditions "substantially limit her major life activities," making it difficult for her to "concentrate, sit, breathe, think, and sleep." *Id.* at ¶¶ 28, 49. Defendants do not argue that Wicik has failed to adequately allege that she is disabled for purposes of her ADA claims and the Court does not find reason to conclude as much. *See* (Dkt. 32) at 5 n.1; *see, e.g., Gogos v. AMS Mech. Sys., Inc.*, 737 F.3d 1170, 1173 (7th Cir. 2013) (concluding that a chronic blood pressure

5

condition for which the plaintiff had taken medication for more than eight years could qualify as a disability). Similarly, Defendants do not argue that Wicik failed to allege that she was a "qualified individual," that is "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

As an additional point regarding Wicik's disabilities, the Court recognizes that the allegations regarding anxiety, depression, and panic attacks are new to the First Amended Complaint. Because the December 2, 2016 Charge of Discrimination generally refers to Wicik's "disability" and because it also specifically mentions her high blood pressure, the First Amended Complaint contains enough for the Court to reasonably infer that the anxiety, depression, and panic attacks could be related to the "disability" alleged in the Charge. *See Green*, 197 F.3d at 898. For clarity, the Court cannot make this same inference with regard to Wicik's alleged stress urinary incontinence because she alleges that she was diagnosed with the condition—which required "several breaks"—at some point during her employment and her allegations regarding bathroom breaks only pertain to her employment at Oak Forest Hospital, not Stroger.

Moving on, where Defendants take issue with Wicik's disparate-treatment claim are her allegations that she suffered adverse employment actions on account of her disabilities. *See Hooper*, 804 F.3d at 853; *Fleishman v. Cont'l Cas. Co.*, 698 F.3d 598, 606 (7th Cir. 2012) ("The ADA prohibits employers from taking adverse employment actions against their employees because of a disability."). An adverse employment action is a "materially adverse change in the terms and conditions of employment [that is] more disruptive than a mere inconvenience or an alteration of job responsibilities." *Alamo v. Bliss*, 864 F.3d 541, 552 (7th Cir. 2017) (alteration in original) (citation omitted); *see Boss v. Castro*, 816 F.3d 910, 917 (7th Cir. 2016) (a materially

6

adverse change "is one which visits upon a plaintiff a significant change in employment status") (citing *Andrews v. CBOCS West, Inc.*, 743 F.3d 230, 235 (7th Cir. 2014)). In other words, a materially adverse employment action is a "significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Chaudhry v. Nucor Steel-Indiana*, 546 F.3d 832, 838 (7th Cir. 2008) (internal quotation marks omitted).

To this point, Wicik alleges that she received unwarranted write ups, has been subjected to discipline, received downgraded reviews, was told that Defendants preferred someone with her boss's mentality, was pressured, was targeted for harassment, was screamed at and subject to publicly degrading treatment, was prevented from obtaining other positions, was prevented from being able to apply or qualify for positions sought after, and was denied the positions and promotions she did seek. (Dkt. 30) at ¶¶ 19, 20–26, 46, 55–58. In addition, Wicik alleges that the harassment, discrimination, and failure to promote were at least in part because of her disability and that other employees without disabilities were treated more favorably. *Id.* at ¶¶ 45, 56, 63. Defendants correctly argue that Wicik's allegations of discipline and poor reviews, without more, do not qualify as adverse employment actions. *See* (Dkt. 32) at 5–6; *see also* (Dkt. 25) at 9–10; *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004) ("There must be some tangible job consequence accompanying the reprimand to rise to the level of a material adverse employment action."). But when combined with Wicik's new allegations that she was prevented from obtaining positions and she was denied promotions, these actions are sufficient at this stage to plead an adverse employment action for purposes of the ADA for the claims arising from Wicik's Charge of Discrimination.[1] *See, e.g., Curtis v. City of Chicago*, 2018 WL

---

[1] Although the First Amended Complaint does not specify the dates on which the alleged adverse employment actions occurred, Wicik is reminded that for a plaintiff in Illinois bringing an ADA claim in

7

1316723, at *2 (N.D. Ill. Mar. 14, 2018) (finding allegations sufficient to create an inference that plaintiff actually sought promotions or sought opportunities to become eligible for promotions); *Fleszar v. Am. Med. Ass'n*, 2010 WL 1005030, at *5 (N.D. Ill. Mar. 11, 2010) (same); *Paxon v. Cty. of Cook, Ill.*, 2002 WL 1968561, at *4 (N.D. Ill. Aug. 23, 2002) (allegations that plaintiff was denied opportunity for promotion and advancement sufficiently alleged a materially adverse employment action). Although Wicik eventually will need to support her claims with specific evidence, *see, e.g.*, *Carter v. Chicago State Univ.*, 778 F.3d 651, 660 (7th Cir. 2015) (*prima facie* case for failure to promote requires applicant to show that he applied for the position sought), the Court's task on a motion to dismiss is not to gauge the ultimate strength of the case. Rather, it is to determine whether the First Amended Complaint contains "enough fact to raise a reasonable expectation that discovery will reveal evidence" to support liability for the wrongdoing alleged. It does. *Adams v. City of Indianapolis*, 742 F.3d 720, 729 (7th Cir. 2014) (citing *Twombly*, 550 U.S. at 556).

Next, to the extent that Count I also asserts a claim for ADA discrimination based on a failure to accommodate, this claim too shall proceed. In addition to showing that she is a qualified individual with a disability, for this claim, "a plaintiff must show that: . . . the employer was aware of her disability; and []the employer failed to reasonably accommodate the disability." *Kotwica v. Rose Packing Co.*, 637 F.3d 744, 747–48 (7th Cir. 2011) (citation omitted). "[T]o be entitled to an accommodation, a disabled employee must have a physical or mental limitation that prevents her from performing an essential function of the particular job at issue and there must be some causal connection between the major life activity that is limited and the

---

federal court, the alleged discriminatory acts must fall within the relevant 300-day period prior to the filing of an administrative charge with the EEOC to be considered timely and to be considered by the Court. *See* 42 U.S.C. §§ 12117(a), 2000e-5(e)(1); *Stepney v. Naperville Sch. Dist. 203*, 392 F.3d 236, 239 (7th Cir. 2004).

accommodation sought." *Brumfield v. City of Chicago*, 735 F.3d 619, 633 (7th Cir. 2013) (citation and quotations omitted). Here, Wicik alleges that "[a]fter being diagnosed with a disability and requesting an accommodation, Defendants failed to consider [her] request and/or discuss alternative accommodations." (Dkt. 30) at ¶ 60. In addition, she alleges that her disabilities limit her major life activities, such as concentrating, sitting, breathing, thinking, and sleeping. *Id.* at ¶¶ 28, 49. These allegations are sufficient to state a claim for failure to accommodate even though there are few facts to support them at this early stage. Again, the Court is not gauging the strength of Wicik's case, just whether she has alleged enough to raise a reasonable expectation that discovery will reveal evidence. Wicik has surpassed this low and she must now develop evidence to support this claim.

### III. FMLA Interference Claim (Count II)

In its previous Order, the Court held that Wicik had stated a claim for interference with her FMLA rights while at Stroger. (Dkt. 25) at 12–14. Wicik's FMLA interference claim set forth in her First Amended Complaint is unchanged from that set out in her original complaint, and the Court will not depart from its earlier conclusion regarding the viability of this claim.

### IV. ADA Retaliation Claim (Count III)

Finally, Wicik alleges that Defendants retaliated against her in violation of the ADA. To state a claim for retaliation, Wicik must allege she engaged in protected activity, she suffered an adverse employment action, and there exists a causal connection between the protected activity and the adverse employment action. *Freelain v. Village of Oak Park*, 888 F.3d 895, 901 (7th Cir. 2018). An adverse employment action for purposes of a retaliation claim is any action that that would dissuade a reasonable employee from engaging in protected activity. *Id.* Wicik argues that her claim is sufficiently pled because she has alleged retaliation on the basis of

9

(1) filing her Charge of Discrimination and (2) requesting an accommodation for her disabilities. (Dkt. 36) at 5. However, in the First Amended Complaint, Wicik fails to connect these instances of protected activity to any adverse employment actions she has alleged. First, with regard to Wicik's Charge of Discrimination—filed around the time Wicik's position was in transition— she does not allege facts sufficient to infer which adverse employment actions she suffered as a result of filing the Charge.

The same goes for Wicik's claim for retaliation on account of her accommodation request. The First Amended Complaint simply alleges that "[b]ased on information and belief, [Wicik's] wrongful discipline was the result of discrimination based upon Defendants' belief that [Wicik] was not entitled to accommodations, in violation of the ADA." (Dkt. 30) at ¶ 62. Without further factual allegations, Wicik has failed to allege any causal connection between her alleged accommodation request to any later issued wrongful discipline, such as when the accommodation was requested and when the wrongful disciple occurred.

As a final point on this topic, although not specifically addressed by Wicik's briefing, "communicating discriminatory workplace conduct to an employer" also can constitute protected activity as well as opposition to the unlawful discrimination for purposes of a retaliation claim. *See Duncan v. Thorek Mem'l Hosp.*, 784 F. Supp. 2d 910, 925 (N.D. Ill. 2011) (citing *Crawford v. Metro. Gov't of Nashville & Davidson County*, 555 U.S. 271, 276 (2009)). Wicik's First Amended Complaint alleges that her "previous discriminatory complaints resulted in harassment, and differing terms and conditions of employment" (*id.* at ¶ 81), but she does not provide factual allegations to link her complaints of discrimination to subsequent harassment or different employment terms or conditions such that she states a claim that any of those actions were taken on account of her alleged protected activity. Because Wicik has failed to allege a causal

connection between adverse employment actions and her alleged protected activities, Count III is dismissed without prejudice. Wicik will be given another opportunity to amend this claim to cure these deficiencies.

V.     **Indemnification (Count IV)**

The indemnification count survives, because the First Amended Complaint survives, and thus Cook County remains a Defendant. *Carver v. Sheriff of LaSalle Cty., Ill.*, 324 F.3d 947, 948 (7th Cir. 2003); *Wojcik v. Cty. of Cook*, 2016 WL 374140, at *5 (N.D. Ill. Feb. 1, 2016); *see also* Fed. R. Civ. P. 17, 19.

## CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Defendants' Motion to Dismiss. Count III is dismissed without prejudice. Wicik shall have one last opportunity to amend her Complaint in connection with this Order to the extent that she can do so. Any Second Amended Complaint shall be filed on or before September 5, 2018. In the meantime, the case will proceed to discovery on Wicik's remaining claims as they relate to those claims included in her December 2, 2016 Charge of Discrimination. Defendant Harper is dismissed from the action as are any allegations pertaining to Wicik's position at Oak Forest Hospital or her urinary incontinence.

_____
Hon. Virginia M. Kendall
United States District Judge

Date:  August 15, 2018

11